The **PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**Roberta J. ARMWOOD et al.,
Defendants.**

**No. 72 C 1650.**

United States District Court, ·
E. D. New York.

July 25, 1973.

Schechter & Schwartz, by Ferdinand M. Schwartz, New York City, for plaintiff.

Edgar L. Sheller, by Trawick H. Stubbs, Jr., for defendant Roberta J. Armwood.

John C. Corbett, Brooklyn, N. Y., guardian ad litem for defendant Anthony Armwood.

London, Buttenwieser & Chalif, by Helen L. Buttenwieser, New York City, for Windham Child Care, custodian of defendants Jeffrey Armwood and Rickey Armwood.

Norman Redlich, Corp. Counsel, by Helena M. Holmes, New York City, for the Dept. of Social Services.

NEAHER, District Judge.

In this action for interpleader brought by the Prudential Insurance Company of America ("Prudential") against claimants of the benefits due under a Serviceman's Group Life Insurance (SGLI) policy,[1] Prudential has applied for absolute discharge from liability as a stakeholder upon depositing in court the sum of $10,000 representing the face amount of the policy. The defendants oppose the application only to the extent of urging that as a condition to such discharge Prudential deposit, in addition, a sum repre-

---

1. The policy was issued on the life of Jesse James Armwood, a deceased veteran. The primary claimant defendants are: (1) Roberta Armwood, mother of the veteran, who resides in Vanceboro, North Carolina; (2) Anthony Armwood, a/k/a Anthony Sherman Mitchell, acknowledged illegitimate son of the veteran

who is in the custody of Roberta Armwood and on whose behalf she has filed claim; (3) Shirley Mitchell of Brooklyn, N. Y., who appears to have been the mother of Anthony Armwood but claims she later had two other children by the veteran, Jeffrey and Rickey Mitchell.

senting interest on the fund for the inordinately lengthy period during which the stakeholder had its use and benefit. The sole contested issue, therefore, is whether Prudential may legally be required to pay interest upon the face amount of the policy as a condition of its discharge, in the circumstances of this case as they appear below.

Jesse James Armwood, a member of the United States Armed Forces, died in Vietnam on or about May 22, 1968. Prudential's Newark, N. J. office of SGLI was promptly notified of Armwood's death by the Adjutant General's office, who also advised that Armwood had not designated a beneficiary but had listed his mother, Roberta Armwood, and a son, Anthony Armwood, in his service records. Accordingly, the Adjutant General requested of Prudential that the proceeds of the policy devolve by operation of statute and the terms of the policy.[2]

In August 1968—within three months of Armwood's death—a claim for the proceeds of the policy was submitted to Prudential by Roberta Armwood alleging that she was the mother of the deceased serviceman, that he left no widow, that his father was deceased and that there was an illegitimate child of the deceased serviceman, one Anthony Armwood, of whom she had custody. She simultaneously submitted a claim on behalf of the child. Prudential refused, however, to rely on the deceased serviceman's acknowledgment of paternity in his service records and the corroborating claim submitted by the serviceman's mother and insisted upon receiving a copy of the child's birth certificate. When none was immediately forthcoming further requests were mailed to Roberta Armwood in September, October and November of 1968 and January, February and March of 1969.

2. At the court's request Prudential's counsel submitted a copy of the SGLI group policy covering Armwood's life. It provides in pertinent part:

"Section 8.   BENEFICIARIES

\*　　\*　　\*　　\*　　\*

"If at the death of the member, there be no surviving designated beneficiary as to all or any part of his insurance, then the amount of the insurance payable for which there is no surviving designated beneficiary shall be payable to the person or persons listed below surviving at the date of the member's death in the following order of precedence:

"(1) To the widow or widower of the member;

"(2) If neither of the above, to the child or children of the member, in equal shares, and descendants of deceased children by representation;

"(3) If none of the above, to the parents of such member, in equal shares, or the survivor of them;

\*　　\*　　\*　　\*　　\*

"If any person otherwise entitled to payment as a designated beneficiary or under this Section does not make claim therefor within one year after the death of the member, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the member. Payment to any

person by virtue of the preceding sentence shall be a bar to recovery by any other person."

38 U.S.C. § 770(a) provides:

"Any amount of insurance under this subchapter in force on any member or former member on the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries as the member or former member may have designated by a writing received in the uniformed services prior to such death;

"Second, if there be no such beneficiary, to the widow or widower of such member or former member;

"Third, if none of the above, to the child or children of such member or former member and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such member or former member or the survivor of them;

"Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such member or former member;

"Sixth, if none of the above, to other next of kin of such member or former member entitled under the laws of domicile of such member or former member at the time of his death."

In April 1969 a New York City certification of birth was submitted by Mrs. Armwood which showed that "Anthony Sherman Mitchell" had been born on March 2, 1962 according to a numbered birth record filed in Brooklyn on March 5, 1962. Although the certificate was the official form of the Bureau of Records and Statistics of New York City's Department of Health and made no provision for parents' names, Prudential was still not satisfied. It again wrote to Roberta Armwood in May, August and September of 1969 requesting a birth certificate which listed Anthony's parents. The United States Department of Veterans Affairs was also called upon to aid in securing the certificate. In September 1969 a birth certificate was received from the Department which listed Anthony's mother as Shirley Mitchell but made no mention of the father.

On November 18, 1969—one and a half years after the veteran's death—Prudential again wrote to Roberta Armwood and the Department of Veterans Affairs now seeking the address of Miss Mitchell in order to obtain information as to whether she had ever entered into a common law or ceremonial marriage with Armwood. The Department obtained her address and forwarded it to Prudential in January 1970. The Department also informed Prudential of hearsay information that Miss Mitchell had asserted to Mrs. Armwood that she was the mother of two other children of the deceased serviceman.

Although no claim had been filed with Prudential on behalf of Miss Mitchell or any other alleged children of Armwood, and more than a year had elapsed from his death, Prudential nevertheless wrote Miss Mitchell in February, March and May of 1970 requesting information regarding her relationship with the serviceman and the paternity of the children. In August 1970 plaintiff sent a representative to see Miss Mitchell and received a claim for the insurance benefits on behalf of two other alleged sons of Armwood, Jeffrey, age 7, and Rickey, age 6.

Having thus succeeded in developing a rival claim, Prudential asserts it then attempted to settle the matter and received "Direction to Pay" forms in February 1971 (see Exhibit H to Reply Affidavit of Ferdinand M. Schwartz, dated January 23, 1973), executed by Mrs. Armwood and Miss Mitchell, authorizing payment of $5,000 to each on behalf of the children in their respective custody.[3]

That "settlement" was never accomplished. Prudential was informed by the New York City Department of Social Services in February 1971 that the agency had removed the two children from Miss Mitchell's custody and neglect proceedings were being pursued against her. The Department of Social Services requested the money be paid into a trust fund set up by the Department of Veterans Affairs. Since such a trust fund could not be legally established, the Department of Social Services informed plaintiff in March 1971 that it was applying to Surrogates Court, Kings County, for the appointment of a guardian. No such guardian was ever appointed.

Except for subsequent occasional contact with the Department of Social Services, Prudential took no further initiative to resolve the controversy its efforts had brought about until it filed this suit on December 7, 1972—some four and a half years after Armwood's death.

Quite clearly Congress intended the benefits of SGLI policies to be paid out promptly and not held by the insuring company for more than four and a half years as has been the case here, see 38 U.S.C. § 770. The statutory language incorporated in the group policy places a

---

3. Prudential was apparently ready to proceed with this "settlement" even though its counsel's letter to the court dated April 20, 1973 acknowledges that "no documents were ever submitted to Prudential proving the parentage of" these alleged two other children of the deceased serviceman.

one-year limit on the filing of claims even by a designated beneficiary, see n. 2, *supra*. If no such claim is filed within that period and no beneficiary is designated, "payment may be made in the order of precedence" specified, *i. e.*, widow, child or children, parents, *id.*

Here the veteran designated no beneficiary but acknowledged in service records prior to his death the existence of two surviving next of kin, a named illegitimate son and his (the veteran's) mother. He mentioned no one else. Within three months of his death a claim was filed on behalf of the two persons so named. A year passed and no other claim was filed. Under the terms of the policy Prudential could have paid the benefits either to the illegitimate child or the veteran's mother, who had custody of him, and such a payment would have been "a bar to recovery by any other person", n. 2, *supra*.

Instead, Prudential, with excessive zeal not called for by Congress or the circumstances, began a series of demands for more and more information, with none of which it was satisfied. Its efforts went far beyond fiduciary caution and produced not only three and a half years additional delay but belated rival claimants which necessitated this lawsuit and the prospect of still more delay in the distribution of the insurance benefits Congress expected to be promptly disbursed.

"[O]rdinarily law or usage would justify the award of interest from the date of an unsatisfied demand by one entitled to the proceeds of an insurance policy. . . ." Powers v. Metropolitan Life Insurance Co., 142 U.S.App.D.C. 95, 439 F.2d 605, 609 (1971). While in "interpleader actions interest need not be automatically allowed, [and] its award should depend upon equitable considerations," *id.*, all of the circumstances in this instance indicate that an award of interest should be required. Since it was responsible for the inordinate delay, Prudential will be discharged from liability to the contesting claimants only upon condition that it deposit a sum equal to the accrued interest at the legal rate on the principal sum of $10,000.

Such interest will be computed from May 22, 1969 (one year after the veteran's death) up to the date the principal sum is deposited with the Clerk of the court.

Furthermore, at the hearing of this application, counsel for Prudential stated that if interest were to be allowed, they would apply for a counsel fee and expenses of the stakeholder in commencing this action. If such an application were presented, the court would disallow it on the ground that had Prudential proceeded in accordance with the terms of the policy, n. 2, *supra*, this action would have been wholly unnecessary.

So ordered.